Reagan vs. Teagan v. The City of McDonough Reagan You said, and two other judges here were not on that panel, so excuse me for reading a little bit, but the argument is my argument, and it couldn't be stated better. Having addressed the threshold jurisdictional issue, I would proceed to the merits. The sine qua non of Ms. Brinson's claim is her indigent status. This was a case, she was on probation, they revoked her probation because she didn't pay her fine, and they did not consider her indigent status. The sine qua non of her claim is her indigent status. Same issue here in this case. In Bearden v. Georgia Supreme Court, Supreme Court held that revoking an indigent's defendant's probation for failure to pay fines or restitution violates due process rights under the 14th Amendment, exactly the same claim that's being pursued here. You said, I see no meaningful distinction between fines and restitution on the one hand and probation services on the other. I would add as a corollary to that, I see no meaningful distinction between those two elements and the payment of a $745 fine when she was found guilty of an offense for which she clearly was guilty. You said, under this precedent, the court's imposition of the probation fees did not injure Ms. Brinson until the court revoked her probation and imprisoned her for failing to pay those fees. Exactly the same situation that's being argued here. But you said, at that point she had a remedy. She did have a remedy. The fact that she was in jail 12 days makes no difference. She was sentenced to 60 days. She has a right to file a habeas corpus petition. She did not file that. And as you said, she could have appealed the revocation and her resulting imprisonment. She did not appeal, however. Consequently, the court's actions in sentencing her to imprisonment remain undisturbed. In other words, the law considers the court's actions lawful. You said, the Supreme Court in Heck v. Humphrey instructs that plaintiffs may not pursue damages actions that would, in effect, amount to a declaration that their state court conviction and sentence, though undisturbed, are invalid. Here, Ms. Brinson's claims that her probation was improperly revoked due to her inability to pay, just like the argument here, fees, in essence, is an illegality of the custody to which she was subject when she filed her complaint. Thus, I would affirm on the merits. Same exact situation here. And I couldn't really say it better. The argument that is made here by the appellant is that the judge in this case, Judge Patton, was acting under authority, judicial authority somehow issued to him by the city of McDonough. That's incorrect. They rely upon the Georgia Constitution Article VI, Section 1, Paragraph 1, and they note that the judicial power of the state shall be vested exclusively in the following classes of cases, magistrate courts, probate courts, juvenile courts, state courts, superior courts, courts of appeal, and the Supreme Court. And they say that the General Assembly may establish or authorize municipal courts. Well, did they do that? They did that. In 36-1, the General Assembly approved the establishment of municipal courts. The appellant says, well, because those delineated courts don't include the state, it must derive its power and its judges must derive its power from the municipality as opposed to the state. But that ignores Georgia Statute 36-32.3. It's entitled Powers of Municipal Court Judges in Criminal Cases, which is what we have here. All judges of all municipal courts in this state shall have and are given the same powers and authorities as magistrates in the matter of and pertaining to criminal cases of whatever nature in the several courts. Couldn't be clearer that the judge in this case presiding over a criminal case acts pursuant to the authority of the state, not pursuant to the authority of the municipality. And how could the municipality ever protect itself from damages? They suggest, well, you could fire this judge. They may come to that. But in this case, in this particular case, they do not have the power and would never have the power to overrule a judge making judicial decisions in a state court criminal case. You mean the municipality doesn't care what its judges do? It has nothing to do with whether they care about it. They don't have the authority to overrule a judge. No, but the allegation, again, I think you're going to win on the merit to this case. But your attempt, in my opinion, to defend what happened here is going off on the wrong foot. Because the allegation is not that this just happened to Ms. Teagan in this case, but that it's happening every single day, every single week in the McDonough Municipal Court. And you're telling me that the policymakers, whoever they may be in the city of McDonough, have no power to remedy that circumstance by, for example, going to the chief judge of the court and saying, listen, we've heard these disturbing claims and allegations. We don't know if they're true, but can you make sure that this stuff is not happening? You're telling me they're powerless to do that. They're powerless to overrule a municipal court judge in making legal decisions in a criminal trial. That is not my question to you. They can't do that. My question is, before the fact, you're saying after the fact. I agree with you about after the fact. I have this case. This case is Ms. Teagan's case in a criminal trial where she did not avail herself of all the remedies that are available to her. She did not file a habeas corpus petition. The judgment is final. She cannot attack that conviction. And Bearden v. State, Judge Joe Flatt's dissent is absolutely on point, and I stand behind it. I'm not defending other cases. There may come other cases. This case, these facts do not warrant the relief that is being requested. I think what Judge Jordan is telling you as the lawyer for the city, at least sometimes, I don't know whether you constantly, you know, regularly. I am not. But somebody ought to tell the city to straighten out their procedure. I certainly can relay, and I will relay, Judge Jordan's comments. I'm hired by an insurance carrier. You ought to relay the whole court's comments. I mean, they're running a cattle call kangaroo court down there, and somebody needs to. But this is not uncommon. Well, if this court were to rule that a municipal court judge is a policymaker for Section 1983 damages liability, my advice to every city would be to disband the municipal court. Make them all state courts. Yeah, make them state courts. You can't, the court, the municipality does not have control over individual cases like this, and this is the only case that's before this court, is the Teagan case, and it's got bad facts for the appellant. I think we have your case. Thank you. May it please the court. In 1983, the United States Supreme Court ruled that it was unconstitutional to revoke a suspended sentence without a prior determination that the defendant had willfully failed to pay the fine. That's been the law since 1983. We understand all that. We understand that reprehensible things took place in this case. You don't have to tell us what the law is. We understand what the constitutional law is. My point, Your Honor, is that deprivation took place pursuant to a well-established policy of the City of McDonough Municipal Court to issue arrest warrants for failure to pay a fine without any prior determination of willfulness. I accept your underlying arguments about the unconstitutionality of some things that may have occurred here. For me, you have a sympathetic ear. But part of the problem you have is that a lot of your claims, maybe not all of them, but a lot of your claims question the validity of Ms. Teagan's conviction. And why isn't the City right? The arguments that Mr. Gray made suggesting that Teagan, I mean that, heck, bars those claims right now. I mean, one of your arguments is that her conviction is invalid because of everything that predated it and everything that post-dated it. A claim like that calls into question the validity of the conviction. Heck says, you generally can't sue for damages unless that conviction is vacated, expunged, or set aside. How do you get around that? Your Honor, if we focus on the central issue in this case, which is her imprisonment for 12 days without a prior determination, that does not call into question the underlying conviction of driving without insurance. She was jailed for a city-created non-existent offense of failure to pay fine. Having a damages remedy for her being imprisoned without a prior hearing for a city offense does not call into question, Your Honor. You're turning the city into an appellate court, basically. I'm speaking for myself. You're saying that we had a case in Alabama where a clerk of the circuit court happened to appoint magistrates, had the authority under state law. Magistrates didn't hold preliminary hearings or they had somebody detained without probable cause, things of that sort, who had been arrested, and they wanted to hold the clerk responsible for what the magistrates were doing. When the law of Alabama provided for all sorts of remedies, most importantly, the writ of habeas corpus. But nobody did anything about it. They didn't want to hold the clerk, who's not a lawyer, just happened to appoint the magistrates. So that would have turned the clerk into an appellate court to review everything these magistrates and judges did, and if they made an error, subject the clerk to damages. And the clerk wouldn't have judicial immunity because the clerk's not a judge. The city here wouldn't have judicial immunity as the appellate court because it's not a judge. Your Honor, the deprivation here occurred the minute she was put in hand. We understand what the deprivation occurred. But there was no remedy for that, Your Honor. And what I'm trying to tell you is she had a remedy immediately. Your Honor, she didn't. In the Superior Court of Georgia, in Judge Anderson's concurrence, in the case of Morrill v. Federal Bureau of Prisons, Judge Anderson pointed out that HEC does not apply where someone is already out of jail and had no reasonable ability to challenge the incarceration. She did not, as an indigent pro se individual who was brought in handcuffs to the jail, have the ability to file a writ of habeas corpus, which requires that you bring it to the Superior Court judge, that the Superior Court judge sanction that writ, that it then be served on the defendant. By the time that happened, she would have been deprived of her constitutional rights for an even longer period of time. The point is that there was not a pre-deprivation hearing, and there's no remedy in Georgia law for the lack of that pre-deprivation hearing. There is a remedy under Georgia law in the Superior Court because that violates the United States Constitution. It's called a writ of habeas corpus. You're putting me away without complying with the federal Constitution. And, by the way, Georgia's Constitution and Georgia's statutory law, which is all by and large the same, because the Georgia statutory law picks up the constitutional rules. So your argument is that that's all, that's the law throughout this circuit. That's the law, as far as I know, in the United States in most municipalities and counties. So your argument boils down to that she's indigent and didn't know how to do these things. And since she's indigent and didn't know how to do these things, whoever created this judicial process is to blame. If I could just respond, Your Honor. Even if there was habeas corpus available, that would not have remedied the fact that she was already incarcerated without a prior hearing. Counsel, the minute they put her in the jail, she could say to the jailer, I'm going to file a writ of habeas corpus, and she would have been released the next day or the same day. And they would have had a hearing right away. Even assuming that the court could have heard her writ of habeas corpus, she still would have been deprived of her liberty, and that writ would not have cured the deprivation of her liberty. Well, the judge that deprived her of the hearing would be entitled to judicial immunity. If you knew that, that's the problem. That's why you want to sue the city. But that's just the way these systems operate. The city had the absolute authority to remove this judge for any reason whatsoever. There you are. You have an incompetent judge, so every error that he makes, you turn into money damages. No, Your Honor. This was done pursuant to a well-established city policy. Our exhibit attached to our summary judgment motion shows 64 individuals arrested for failure to pay a fine, both ordinance and state offenses, over a period of four years. All the same, the city has generated like $7 million in revenue from fees and fines. The clerk of the court, acting on her own as a city employee, looks at a schedule of who has failed to pay their fine. She then automatically generates an arrest warrant. We understand all of that. I'm saying the city act we understand. We understand all of that. I think we have your case. Thank you, Your Honor. Court will be in recess until 9 in the morning. All rise. Thank you, Your Honor.